IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:10-CR-110 |
| | ) | |
| ANTONIO HERRERA | ) | |

**MEMORANDUM AND ORDER**

The defendant will be sentenced on March 21, 2012. At paragraph 44 of the presentence investigation report ("PSR"), the probation officer recommends that the defendant's offense level be increased by three pursuant to U.S.S.G. § 3B1.1(b) based on the defendant's role as a manager or supervisor of the charged cocaine and marijuana conspiracy. At paragraph 42 of the PSR, the probation officer recommends that the defendant's offense level be increased by two pursuant to U.S.S.G. § 2D1.1(b)(14)(B) for knowing involvement of a minor in the offense.

The defendant objects to both adjustments. The court has considered the defendant's arguments. Based on the agreed factual basis contained in the defendant's signed plea agreement, the court finds that a hearing on the objections is unnecessary. For the reasons provided herein, both objections will be overruled.

I.

*Managerial or Supervisory Role*

Section 3B1.1(b) of the advisory sentencing guidelines provides for a three-level increase in the offense level, "If the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive . . . ." The defendant does not challenge that the instant conspiracy (in which 36 defendants are charged) involved five or more participants or was otherwise extensive.

As for the issue of the defendant's managerial/supervisory role in the conspiracy, the court cites the following facts *admitted by the defendant* in his plea agreement.[1]

> During the period of the conspiracy, which operated from May 2008 until at least the end of October 2010, the defendant was the most trusted and loyal associate of co-defendant Tomas Estrada Sarabia in Sarabia's drug trafficking organization. During this period of time, Sarabia was a primary source of supply and distributor of cocaine and marijuana in the Tri-Cities area of North East Tennessee. . . .
>
> . . . The defendant, [certain codefendants] and others would store the cocaine and marijuana in stash locations in the Johnson City, Tennessee, area before having the drugs transported to distributors . . . .
>
> . . .

---

[1] The defendant does not speak fluent English. His signed plea agreement concludes with a handwritten notation initialed by him stating, "All 21 pages of this document have been read to me in my native language. I have been instructed by my attorney to interrupt the interpreter if I disagreed with or had questions about the words contained in these pages. I did this as instructed and the changes that are contained in these pages reflect my corrections."

2

On February 19, 2010, a confidential informant recorded a conversation with the defendant. During the conversation, the defendant discussed renting a room to maintain a stash house so he would not have to keep his weapons and "everything else" at his residence. The defendant told the informant that he was going to pick up [a] new shipment of cocaine "merchandise" soon. The defendant told the informant that sometimes he and Sarabia went together to pick it up, but they usually tried to take turns going to get it. The defendant explained that way was better because if the police stopped them, only one of them would get arrested. At that point, the defendant made arrangements to meet with the landlord for the apartment that the defendant wanted to rent and use as a stash house. . . .

During this recorded conversation, the defendant also told the informant how the cocaine they obtained from their suppliers was thereafter distributed. The defendant explained that it was distributed among the various sellers the same day it was received. . . . He said that they had four main sellers and each would get a quarter kilogram apiece from the kilogram of cocaine that Sarabia received from his suppliers. . . . He bragged that he and Sarabia bought land in Oaxaca and Durango, Mexico with money from their drug dealing . . . . The defendant explained to the informant he and Sarabia have someone that cuts the cocaine for them for the purpose of deriving more profit. . . . The defendant told the informant that he and Sarabia were in business together and it had worked well for them. He said that even some of the family had tried to break up their partnership. . . .

. . .

. . . During the recorded transaction [an April 21, 2010 cocaine sale], the defendant said that he and Sarabia received one kilogram of cocaine the previous day . . . and described the shipment as an "emergency" kilogram. The defendant said that he and Sarabia were going to receive more cocaine that evening.

. . .

. . . During the [May 21, 2010 cocaine] transaction, the defendant told the informant that he and Sarabia distributed approximately two kilograms of cocaine per week . . . .

. . .

3

> . . . On July 26, 2010, in a Title II intercepted conversation, . . . [t]he defendant told Sarabia that he had $5,000 and Sarabia said he had another $6,000 to take to purchase additional large quantities of cocaine. . . .
>
> . . .
>
> On August 20, 2010, in a Title III intercepted conversation, the defendant told Sarabia that he had just finished weighing all of the cocaine that was obtained from their supplier, Andres Linares in Knoxville, Tennessee, in preparation for parceling it out to the various sellers . . . . On this occasion, the defendant and Sarabia purchased at least nine ounces and another 4.5 ounces of cocaine from Linares. Sarabia said he thought that 25 grams was [sic] missing. The defendant said that 10 grams were still needed to complete what they bought. . . .
>
> On August 30, 2010, in a Title III intercepted conversation, the defendant and Sarabia discussed at great length the amount of money they had put together to purchase additional cocaine from their suppliers. The defendant and Sarabia agreed that they had at least $22,000 to take to their suppliers. Sarabia and the defendant discussed co-defendants Carlos Rodriguez, Manuel Burelo and Sergio Castaneda and how much cocaine they had left to sell, and when he and Sarabia should be receiving money from them from their drug sales. . . .
>
> . . .
>
> . . . On October 13, 2010, the defendant spoke with the informant and told him to come by his residence to get the cocaine. When the informant arrived, co-defendant Paul Pelaez distributed two ounces of cocaine to the informant (Palaez, however, did not know the exact weight of the cocaine, nor did I tell him the weight and contents of the container), upon the direction of the defendant and Sarabia . . . .

[Doc. 547, p. 3-13].

Based on these admitted facts, the court finds that the defendant was significantly involved in planning and organizing the extensive drug distribution network in this case. He procured, stored, and distributed to codefendants. He profited significantly and

4

he directed others. He admittedly was "in business together" with Estrada Sarabia (the lead defendant in this case) and he admittedly was Estrada Sarabia's "most trusted and loyal associate." The defendant's offense level is properly increased by three for being a manager or supervisor, pursuant to U.S.S.G. § 3B1.1(b).

## II.

### *Involvement of a Minor*

Section 2D1.1(b)(14)(B) of the advisory guidelines recommends a two-level increase in the offense level if, in material part, the defendant:

1. Receives an aggravating role adjustment under § 3B1.1;

2. Knew that an individual was less than 18 years of age; and

3. Involved that minor individual in the controlled substance offense of conviction.

The court has already found that an aggravating role adjustment under § 3B1.1(b) is warranted in this case. The defendant does not challenge that he knew that defendant Estrada Sarabia's 14-year-old son was less than 18 years of age. As for the defendant's involvement of that minor in the offense of conviction, the court again turns to the facts admitted by the defendant in his signed plea agreement.

5

> . . . During [a January 19, 2010 cocaine sale to a confidential informant], surveillance agents observed the defendant arrive with the [sic] Sarabia's 14-year-old son in the car. The informant got into the defendant's vehicle and they drove around the block, and in a recorded transaction, the defendant sold the informant the quarter ounce of cocaine. When they got back to the parking lot, Sarabia's son went into the restaurant to make change for the transaction because the price of the cocaine [was] $250.00 and the informant only had $260.00.
>
> . . .
>
> On July 9, 2010, a confidential informant made a recorded telephone call to Sarabia and arranged to purchase two ounces of cocaine. Sarabia directed the defendant to deliver the cocaine. The defendant subsequently met the informant and sold him the two ounces of cocaine. During the recorded transaction between the informant and the defendant, surveillance agents observed that Sarabia's 14-year-old son was also present.
>
> . . .
>
> . . . On July 28, 2010, in a Title III intercepted conversation, Sarabia's minor son asked Sarabia if co-defendant Orlando Leonel Zacarias needed any drugs. Sarabia said that he did and told his son to drop it off for him. Sarabia then asked the defendant how much Zacarias was going to need and the defendant told Sarabia and Sarabia's son that Zacarias needed one ounce of cocaine.

[Doc. 547, p. 6, 10-11]. Based on these admitted facts, the court finds that the defendant involved a minor in the instant conspiracy. The probation officer correctly increased the defendant's offense level pursuant to § 2D1.1(b)(14)(B).

III.

*Conclusion*

For the reasons provided herein, the defendant's objections to his PSR are overruled in their entirety. The defendant's "Petition for Writ of Habeas Corpus Ad

6

Testificandum" [doc. 797], whereby he seeks the testimony of codefendant Estrada Sarabia at his sentencing hearing regarding the objections addressed herein, is **DENIED AS MOOT**.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge